## KENNEDY *v.* JONES.

1. In a suit by a vendor of land against a vendee to recover a part of the purchase-money, where one of the pleas of the defendant was that the plaintiff received certain checks for the amount of money sued for, which he failed to present within a reasonable time, and that on account of the drawer's insolvency, occurring between the receipt of the checks by the vendor and their presentation to the drawee bank, the checks were not paid, an admission by the plaintiff that he had the checks ten days after he received them and used them to pay for land purchased from another is relevant on the issue of presentation within a reasonable time.

2. Where it is relevant to show that if a check had been **promptly** presented it would have been honored by the drawee bank, it is competent for a witness to testify that the drawer gave him a check for about the same sum a few days later on the same bank, which was paid and credited to his account by the bank before the presentation of the dishonored check; and the witness's deposit book containing the entry is admissible in connection with his testimony.

3. A vendor of land, who receives from his vendee the check of a stranger, payable to and indorsed by a third person, to be collected and its proceeds applied to the payment of the purchase-money, is bound to exercise reasonable diligence in the presentation of the check; and if he is lacking in such diligence, and the check is dishonored because of the drawer's insolvency intervening before its presentment, the loss will fall on the vendor. Although the drawer may be overdrawn in his account with the drawee, nevertheless, if the latter receives deposits from the drawer and pays his checks, it is the duty of a holder of a check of such drawer to present it, with reasonable diligence, to the drawee. The instruction of the court, even if subject to the criticism of its verbiage, was in essential harmony with the foregoing principles, and, when considered in connection with the evidence, is not ground for a new trial.

JULY 18, 1913.

Attachment.   Before Judge Rawlings.   Tattnall superior court. December 27, 1911.

*H. C. Beasley* and *Hines & Jordan,* for plaintiff.

*Way & Burkhalter,* for defendant.

EVANS, P. J.   S. C. Kennedy sold to L. W. Jones a tract of land for $1,500. Jones paid the purchase-money by paying $463.93 in cash, and by delivering to J. D. Kennedy for S. C. Kennedy two checks dated Glennville, Georgia, January 4, 1908, drawn by W. R. Purvis on the People's Bank of Glenville, Georgia, both payable to the order of B. F. Dowdy, for the sum of $508.02 each, and both indorsed by Dowdy. The checks were delivered on January 6, 1908. On January 16 Kennedy delivered these checks to L. B. Dukes in part payment for a tract of land which he had bought from Dukes in Wayne county, Georgia. Dukes deposited these checks in the Merchants and Farmers Bank of Jesup, January 16, 1908, and they were forwarded to the Citizens and Southern Bank of Savannah, Georgia, which latter bank forwarded them, February 6, 1908, to the bank at Glennville for collection. The payee bank declined to pay the checks, because the drawer had no funds sufficient to pay them. It appeared from the evidence that during the interval between the drawing and the presentation of the checks the account of W. R. Purvis was overdrawn; but it also appeared that during this time he had made numerous deposits and drawn several

checks which were paid by the drawee bank. The amount of the deposits was largely in excess of the checks dishonored. When the checks were dishonored Kennedy sued out an attachment against Jones for so much of the purchase-money of the land sold by him to Jones as was represented by the checks. The defendant pleaded that he was not indebted, because the checks were accepted in payment of the land, and because of the delay in presenting the checks for payment by Kennedy and his transferee, alleging that the drawer had become insolvent after giving the checks, and for this reason the money could not be made out of him. The jury found in favor of the defendant, and the plaintiff's motion for a new trial was overruled by the court.

1. The court allowed in evidence a plea filed by the plaintiff Kennedy to a suit brought against him by L. B. Dukes. It appeared from that plea that the checks drawn by Purvis on the Glennville bank in favor of Dowdy, which were delivered by Jones to Kennedy in part payment for the land, had been used by Kennedy in paying for the land bought from Dukes. Kennedy averred in that plea that these checks were delivered to Dukes on January 16, 1908, and were accepted by him as payment for the land purchased. The evidence was objected to on the ground of irrelevancy. The evidence was not irrelevant. It was admitted in that plea that Kennedy was in possession of the checks as late as January 16, and this was relevant to the issue as to whether or not he acted with reasonable promptness in the collection of the checks.

2. A witness was allowed to testify that the drawer of the checks delivered by Jones to Kennedy also gave him a check on the same bank at a time between the drawing and the dishonor of the checks in controversy, which was paid and credited to his account by the bank. The witness identified this item in his deposit book. The deposit book was then offered in evidence, and was admitted over objection. The testimony was admissible, and so was the book in connection with the testimony.

3. A check is a commercial device intended to be used as a temporary expedient for the actual money. It is generally designed for immediate payment and not for circulation, and therefore it becomes the duty of the holder to present it for payment as soon as he reasonably may; and if he does not, he keeps it at his own peril. *Daniels* v. *Kyle,* 5 *Ga.* 245; *Comer* v. *Dufour,* 95 *Ga.* 378 (22 S. E.

543, 30 L. R. A. 300, 51 Am. St. R. 89). Most usually the question of prompt presentation arises in cases of attempts to hold the drawer or indorser liable because of the subsequent insolvency of or suspension of payment by the drawee. But where a vendor of property receives a check drawn by a stranger in favor of a third person for the payment of property, and there is no agreement that it is taken as an absolute payment, the vendor who thus becomes the holder is under a duty to his vendee to present the check to the drawee with reasonable promptness; and if, by failing to do so, the check is not paid, because either of the drawer's or drawee's intervening insolvency, the loss must fall on the vendor. There may be conditions which will excuse the holder's delay in making presentation, as where the drawer has no funds and no ground for a reasonable expectation that the check will be paid. 5 Cyc. 533. The basis for this excuse is that the law does not require a vain thing. The burden is upon the holder to show such excuse. If it appears that at the time the check was drawn the drawer had an arrangement with the drawee to honor the check, or from a course of business dealings such an arrangement might be implied, or that subsequently sums of money in excess of the check were paid by the drawee on other checks, the holder will not be relieved of the duty of exercising due diligence in the presentation of the check because it can not be said that if the check had been presented with reasonable promptness it would not have been paid. Hamlin v. Simpson, 105 Ia. 125 (74 N. W. 906, 44 L. R. A. 397); Robinson v. Ames, 20 Johnson (N. Y.), 146 (11 Am. D. 259). The circumstance that the drawer may have overdrawn his account, and there may not have been anything to his credit, will not necessarily excuse want of presentation of the check by the holder with due diligence. For, as we have seen, either from an express or implied agreement between the drawer and drawee or from their course of dealings, the drawer may have had a reasonable expectation for the payment of his check, and the holder would be under a duty to use reasonable diligence in its presentation. In the instant case it appears that in the interval between the drawing of the check and its presentation the drawee paid numerous checks of the drawer, the aggregate being largely in excess of the amount of those in controversy. The plaintiff resided within seven miles of Glennville. He gives no reason whatever for retaining the checks without

presentation to the bank; and it appears that on the day that he, in company with his father, left for Wayne county, they spent a part of the day in Glennville, having the checks in their possession, and they discussed the advisability of presenting them for payment. Of their own volition they preferred not to present the checks, but retained them to be used in the purchase of the Wayne county land. The plaintiff's transferee deposited them with his bank, and thirty days elapsed before their presentation to the drawee bank. This evidence came from the plaintiff, and was not in dispute. The jury were well authorized to find that the failure to collect the checks was due to the plaintiff's negligence in presenting them. Under such circumstances, the charge of the court complained of, even if open to the criticism of its verbiage, was in such essential harmony with the law regarding the presentation of checks, as above enunciated, that there was no abuse of discretion in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur.*